1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 1:05-cr-00231-AWI** |
| **Plaintiff,** | |
| v. | **ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |
| **JOSEPH HENRY NAREZ,** | |
| **Defendant.** | (Doc. No. 32) |

Defendant Joseph Henry Narez, appearing through counsel, moves for compassionate release under 18 U.S.C. § 3582(c).  For the reasons that follow, the Court will deny this motion.

### BACKGROUND

In October 2005, Narez pleaded guilty to one count of bank robbery, 18 U.S.C. § 2113(a), and four counts of interference with commerce by robbery, 18 U.S.C. § 1951(a).  Doc. No. 23 at 1.  The Court sentenced him to a total term of 324 months of imprisonment and 36 months of supervised release.  Id. at 2–3.  Narez, who is currently sixty-one years old, is incarcerated in USP Lompoc and has a projected release date of November 28, 2028.  He filed his motion on August 11, 2021.  Doc. No. 32.  The government filed its opposition on October 15, 2021.  Doc. No. 41. And Narez filed his reply on November 8, 2021.  Doc. No. 47.

### LEGAL STANDARD

Criminal defendants are permitted to request compassionate release for "extraordinary and compelling reasons."  United States v. Aruda, 993 F.3d 797, 799 (9th Cir. 2021).  Specifically, 18

U.S.C. § 3582 provides in relevant part that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction;
> > > >
> > > > . . . .
> > >
> > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).  With one exception, Congress has fully delegated to the Sentencing Commission the responsibility to define what constitutes "extraordinary and compelling reasons" under the statute.  28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").  The Sentencing Commission has issued a policy statement that details particular situations in which the defendant's health, age, or family circumstances constitute an extraordinary and compelling reason under § 3582(c)(1)(A).  U.S.S.G. § 1B1.13.  For purposes here, this policy statement is persuasive but not binding authority, which means the Court may find other bases for extraordinary and compelling reasons beyond the policy statement's language.  Aruda, 993 F.3d at 801.

For any motion made under § 3582(c)(1)(A), "[t]he defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction." United States v. Greenhut, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing United States v. Sprague, 135 F.3d 1301, 1306–07 (9th Cir. 1998)).

**<u>DISCUSSION</u>**

In his motion, Narez identifies two sets of circumstances that each constitute an extraordinary and compelling reason warranting the reduction of his sentence under § 3582(c)(1)(A).  First, he asserts that, in light of subsequent changes in applicable laws, his sentence far exceeds that which would likely be imposed today for the same criminal conduct.  Second, he points to his age, medical conditions, and the prison environment during the COVID-19 pandemic, and argues that this combination puts him at heightened risk for severe illness.  To go along with these two bases, Narez also argues that his compassionate release is consistent with applicable factors under 18 U.S.C. § 3553(a).

Before the merits of these arguments can be addressed, however, the Court must first assess the government's threshold exhaustion challenge.

**A.     Exhaustion**

As referenced in the statutory language above, § 3582(c)(1)(A) contains an exhaustion requirement.  Namely, a court may not consider a motion brought under the statute unless (1) the Director of the Bureau of Prisons has filed the motion on the defendant's behalf, or (2) the defendant has requested that the Bureau of Prisons make such a motion and either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (b) thirty days have elapsed since the "warden of the defendant's facility" received a compassionate-release request from the defendant.  § 3582(c)(1)(A); <u>United States v. Keller</u>, 2 F.4th 1278, 1281 (9th Cir. 2021).  This requirement "imposes a mandatory claim-processing rule that must be enforced when properly invoked."  <u>Keller</u>, 2 F.4th at 1282.  It is relevant here because the government argues that Narez has not carried his burden to show exhaustion.  <u>United States v. Mann</u>, No. 1:08-CR-0212 AWI-1, 2021 WL 601091, at *3 (E.D. Cal. Feb. 16, 2021).

Narez asserts that he twice satisfied the exhaustion requirement for purposes of this motion.  First, in June 2020, he submitted a request for compassionate release to the USP Lompoc warden that was then denied in August 2020.  Narez has produced copies of the request and the

denial with his motion. Doc. No. 32-1 at 2–4. The request is a two-page handwritten letter that is dated June 22, 2020, and stamped as received by the warden's office on June 29, 2020. Id. at 3–4. In the request, Narez states: "In the wake of COVID-19 concerns in USP Lompoc and throughout the BOP, coupled with the fact that I am 60 years of age brings upon my reasons for this request." He then states: "But of my biggest reasons for this request is to allow me to provide care for my mother, who will be 80 years of age in September of this year and for her husband, who is 84 years of age. I have maintained a great relationship with them and they are willingly providing a place of residence for me with them in Bakersfield, CA." Throughout the rest of the letter, Narez atones for his criminal history, and addresses his good behavior and rehabilitative progress while incarcerated and positive highlights from his pre-incarceration past and future plans.

Second, in May 2021, Narez submitted an additional request for compassionate release, for which he has never received a response. Evidence of this request comes entirely by way of a declaration from counsel that includes the following statement:

> On or about May 24, 2021 Joseph Narez advised me that he had mailed a second request for compassionate release to FCI Lompoc Warden Engleman on May 24, 2021. He did this by completing a BP-A148.055 form, commonly referred to as a "cop-out," and placing the request in a mailbox located in the inmate housing unit, to be forwarded to Warden Engleman. As of August 8, 2021, Mr. Narez had not yet received any sort of reply from the BOP.

Doc. No. 32-1 at 6–7 ("Kersten Decl."), ¶ 5.

Against Narez's presentation, the government argues that Narez failed to exhaust at least part of his instant motion, as some of the bases on which he now moves for compassionate release are not shown amongst the evidence related to his requests.[1] Narez responds that the government "cites no authority for the proposition that grounds not raised in the request submitted to the [Bureau of Prisons] are barred from consideration by the district court."

While Narez's statement is technically true, the Court itself is aware of such authority. In

---

[1] The government disputes that the second request was even made, although it does not submit any evidence refuting counsel's declaration. Thus, the record before the Court shows that Narez properly exhausted his administrative remedies as to both the June 2020 and May 2021 requests, as each was followed by at least thirty days without a response. As shown above, however, the evidence related to the latter request does not reveal anything about that request's contents.

1  fact, for the related question of whether successive compassionate release motions require

2  independent satisfaction of the exhaustion requirement, this Court previously explained that, "at a

3  minimum, a new request with the warden is necessary when there are material changes in

4  circumstances from the time a prior request for compassionate release was filed." United States v.

5  Bolanos, No. 1:13-cr-0362-AWI-1, 2021 WL 929661, at *3 (E.D. Cal. Mar. 11, 2021). Courts

6  that have directly addressed whether § 3582(c)(1)(A) requires "issue exhaustion"—as the

7  government's argument suggests—have come to different conclusions. Compare United States v.

8  Roueche, No. CR07-344RSL, 2021 WL 2778577, at *3 (W.D. Wash. July 2, 2021) (requiring

9  issue exhaustion), and United States v. McNair, 481 F. Supp. 3d 362, 365–68 (D.N.J. 2020)

10  (same), with United States v. Brown, 457 F. Supp. 3d 691, 697–98 (S.D. Iowa 2020) (rejecting

11  issue exhaustion argument), and United States v. Torres, 464 F. Supp. 3d 651, 654–57 (S.D.N.Y.

12  2020) (same). The Seventh Circuit, at this time, appears to be the only circuit court to have issued

13  a published decision that explicitly addresses the matter. United States v. Williams, 987 F.3d 700

14  (7th Cir. 2021). The court in Williams held that issue exhaustion is to be applied, and that "in

15  order properly to exhaust, an inmate is required to present the same or similar ground for

16  compassionate release in a request to the Bureau as in a motion to the court." Id. at 703. Finally,

17  although the Ninth Circuit in Keller did not directly square the matter, the court's decision at least

18  impliedly recognized that exhaustion cannot be established based on circumstances different from

19  those set forth in a request to the warden:

20  
21  
22  
23  

> First, Keller asserts that he fully exhausted his administrative remedies for his
> second motion because 30 days had passed since he lodged his first administrative
> request with the warden in July 2020. But the July 2020 request served as the
> predicate for Keller's first motion in the district court, which was denied in
> September 2020, and could not have initiated the administrative process for his
> January 2021 motion, which was itself premised on Keller's claim of changed
> circumstances.

24  Keller, 2 F.4th at 1283.[2]

25  
26  ———————————

[2] Other circuit courts also appear to have impliedly held—albeit in unpublished decisions—that some degree of issue
exhaustion is required under § 3582(c)(1)(A). See, e.g., United States v. Gieswein, 832 F. App'x 576, 578 (10th Cir.
2021) ("Mr. Gieswein's request to the warden did not include COVID-19 as a reason for compassionate release.
27  Therefore, he has failed to meet the statute's exhaustion requirements and his COVID-19 justification was properly
dismissed." (citation omitted)); United States v. Rivas, 833 F. App'x 556, 558 (5th Cir. 2020) ("Rivas was required to
28  exhaust these two new arguments by filing a request with the BOP, but he failed to do so. Because the statutory
language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must

5

The Court is leery about drawing a bright-line rule out of this developing and still somewhat muddled collection of authority. But the Court will stick with the logic it expressed in Bolanos that materially different grounds for compassionate release must each be presented in a request to the warden before a motion to the court is filed. Bolanos, 2021 WL 929661, at *3; see also United States v. Knight, No. 1:15-CR-393, 2020 WL 4059886, at *2 (M.D.N.C. July 20, 2020) ("The exhaustion requirement should not be applied hyper-technically, and the request to the warden need not be identical in detail or specificity to the motion made in court. But there must be a reasonable degree of overlap which gives the [warden] a fair opportunity to consider whether to make the motion on the defendant's behalf." (citation omitted)). Even if seemingly harsh results are produced by its application, this standard both embraces the statutory language of § 3582(c)(1)(A) and supports the important policy goals of the exhaustion requirement, which is designed to enable "the executive branch to carefully evaluate a claim in the first instance and possibly obviate the need for litigation before it begins." Keller, 2 F.4th at 1283.

Applying that standard here, Narez has not established that he exhausted his arguments for compassionate release based on a sentencing disparity arising from subsequent changes in the law or his medical conditions of chronic kidney disease, hypertension, hyperlipidemia, epilepsy/seizure disorder, benign prostatic hyperplasia, and hypothyroidism. Nothing in the evidence before the Court shows that these arguments were raised in a request to the warden. See United States v. Gray, No. 1:08-cr-273, 2021 WL 3883653, at *1 (E.D. Va. Aug. 10, 2021) (distinguishing an unexhausted argument based on a purported change in sentencing law from exhausted arguments based on medical conditions and COVID-19); United States v. Douglas, No. CR 10-171-4 (JDB), 2020 WL 5816244, at *2 (D.D.C. Sept. 30, 2020) (distinguishing an unexhausted argument based on specific medical conditions from a potentially exhausted argument based on the danger of contracting COVID-19 in a prison environment).[3] Thus, the

---

enforce this procedural rule since the Government did not waive the exhaustion issue on appeal. Any holding to the contrary would effectively defeat the purpose of the exhaustion requirement and circumvent clear congressional intent." (citation omitted)).

[3] The Court notes that the circumstances here are unlike those in cases where the exhaustion requirement was considered satisfied even though a motion for compassionate release newly raised COVID-19 concerns on top of properly exhausted medical conditions. See, e.g., United States v. Sawyers, No. CR 15-00070-RSWL-1, 2021 WL

1  Court will deny this portion of Narez's motion.  It will do so without prejudice to Narez renewing
2  a motion on these bases, if one is not already filed on his behalf, after they have been fully
3  exhausted.

4

5      **B.     Merits**

6          This leaves the Court's consideration of Narez's remaining argument for compassionate
7  release based on his age and COVID-19 in the prison setting.  As an initial matter, the Sentencing
8  Commission has described criteria regarding a defendant's age that satisfy the "extraordinary and
9  compelling" requirement.  Specifically, the requirement is to be considered met where "[t]he
10  defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or
11  mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of
12  his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13 cmt. n.1(B).  Narez, who
13  is sixty-one years old, has not shown that he is experiencing a serious deterioration in physical or
14  mental health because of the aging process.  In other words, for multiple reasons Narez does not
15  meet the age-related criteria under Sentencing Guideline § 1B1.13.

16          The Court also recognizes that Narez's age places him at a higher risk of experiencing
17  severe consequences from COVID-19 than younger members of the prison population.  But this
18  alone is insufficient to show an extraordinary and compelling basis for compassionate release.  See
19  United States v. Guisar Torres, No. 1:15-cr-0288-AWI-SKO-4, 2021 WL 1751868, at *4 (E.D.
20  Cal. May 4, 2021) (denying compassionate release to a sixty-one-year-old); see also United States
21  v. Haney, 454 F. Supp. 3d 316, 322–23 (S.D.N.Y. 2020) (denying compassionate release to a
22  sixty-one-year-old, and explaining that if age alone was sufficient to grant compassionate release,
23  "it follows that every federal inmate in the country above the age of 60 should be forthwith
24  released from detention, a result that does not remotely comply with the limited scope of
25  compassionate release").  Moreover, Narez has not shown that any risk he currently faces is
26  heightened even further because of his incarceration at USP Lompoc.  For one, according to the

27

28  2581412, at *2–3 (C.D. Cal. June 22, 2021) (collecting cases); United States v. Parker, 461 F. Supp. 3d 966, 976–77
   (C.D. Cal. 2020); (same).

Bureau of Prisons' regularly maintained website, USP Lompoc is dealing with only two active cases of COVID-19 (one inmate and one staff member) as of the date of this order. See Federal Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/ (last visited Nov. 23, 2021).[4]  In addition, Narez represents in his reply brief that he has received the COVID-19 vaccine. See United States v. Smith, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3–5 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection.").  In sum, Narez has not established the existence of an extraordinary and compelling reason justifying a sentence reduction under § 3582(c)(1)(a).

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Narez's motion for compassionate release (Doc. No. 32) is DENIED.

IT IS SO ORDERED.

Dated:   November 28, 2021          _____

SENIOR DISTRICT JUDGE

---

[4] As this Court has previously recognized, although Lompoc was once a hotspot for COVID-19 infections, the prison has recovered from its past failures to contain the disease and implemented sufficient protocols that have enabled it to adequately respond, monitor, and care for its inmate population. United States v. Risley, No. 1:12-CR-0363 AWI, 2020 WL 4748513, at *6 (E.D. Cal. Aug. 17, 2020).